**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No. **CV 24-10720-JFW(AGRx)** Date: June 11, 2025

Title: Cabo Virgenes Shipping, Inc. *-v-* Cosgold Lake Maritime, Ltd., et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):** **ORDER DENYING DEFENDANTS' MOTION TO QUASH SERVICE PURSUANT TO RULE 12(b)(5) AND GRANTING IN PART, DENYING IN PART MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2) [filed 5/6/2025; Docket No. 35];**

**ORDER TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE STAYED PENDING RESOLUTION OF NINGBO COURT ACTION**

On May 6, 2025, Defendants Cosgold Lake Maritime, Ltd. ("Cosgold Maritime"), Pan Cosmos Shipping & Enterprises Co. Ltd. ("Pan Cosmos"), China Shipping Development (Hong Kong) Marine Co. Ltd. ("China Shipping"), and China Pool, Ltd. ("China Pool") (collectively, "Defendants") filed a Motion to Quash Service Pursuant to Rule 12(b)(5) and Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2). On May 19, 2025, Plaintiff Cabo Virgenes Shipping Inc. ("Cabo Virgenes" or "Plaintiff") filed its Opposition. On May 26, 2025, Defendants filed a Reply. Pursuant to the Stipulation of the Parties and with leave of Court, on June 4, 2024, Plaintiff filed a Response to the Supplemental Declaration of Zhou Jingqing. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's June 9, 2025 hearing calendar and the parties were given advance notice. After considering the moving, opposing, reply, and supplemental papers, and the arguments therein, the Court rules as follows:

 Initials of Deputy Clerk sr

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a December 18, 2022 collision between two foreign-flagged vessels, the *CABO KAMUI* and the *COSGOLD LAKE*, at the Pacific Lightering Areas ("PAL"), in the United States' Exclusive Economic Zone ("EEZ"), approximately 67 nautical miles off San Clemente Island.

### A. The Parties

Plaintiff, a Panamanian company, is the registered owner of the vessel *CABO KAMUI*, an oil products tanker built in 2016 which sails under the flag of Panama.

Defendant Cosgold Maritime was the registered owner of the *COSGOLD LAKE,* which sails under the flag of Hong Kong. Defendant Pan Cosmos was the bareboat charterer[1] of the *COSGOLD LAKE* and was responsible for manning and navigating the vessel. Defendant China Shipping was the time charterer of the *COSGOLD LAKE* and in turn sub-time chartered the ship to Defendant China Pool.[2] All four Defendants are legal entities organized under the laws of Hong Kong.

Defendant China Pool voyage chartered the *COSGOLD LAKE* to Phillips 66 Company ("Phillips 66"). Pursuant to the Phillips 66 voyage charter agreement, Plaintiff alleges that the *COSGOLD LAKE* was chartered to transport crude oil and fuel oil to Phillips 66's marine terminal located within this District at the Port of Los Angeles. Plaintiff asserts that the voyage charter agreement also contemplated that the *COSGOLD LAKE* would call at the PAL, which is an area off the coast of southern California where tank vessels conduct ship-to-ship ("STS") transfer operations. The PAL is in the United States's Exclusive Economic Zone and ship-to-ship transfers conducted there are subject to regulation by the U.S. Coast Guard.

### B. This Action and Service of the First Amended Complaint

Plaintiff filed a Complaint against Defendants on December 16, 2024 and its First Amended Complaint on January 9, 2025, alleging a single claim for relief (negligence) and seeking $1.4

---

[1]A bareboat or demise charter is a contractual arrangement whereby the owner of the vessel relinquishes possession, control and command of the vessel and demises the entire vessel to a bareboat charterer. The bareboat charterer then becomes the owner *pro hac vice* and mans, navigates, and operates the vessel. *Reed v. S.S. Yaka*, 373 U.S. 410 (1963) (superseded by statute on other grounds); 8 Benedict on Admiralty § 18.02; *see also* Emery W. Harper, Demise Charters: *Responsibilities of Owner or Charterer for Loss or Damage*, 49 Tul. L. Rev. 785, 785 (1975).

[2]A time charter is the charter or kind of lease of a vessel for a specified period of time. A voyage charter is a charter for one voyage. The owner or bareboat charterer who time charters the vessel to a time charterer continues to man, navigate, and operate the vessel. Generally, the time and voyage charterers conduct cargo operations and load and discharge their cargo on board the vessel and select and direct the vessel to the load and discharge ports. *Thyssen, Inc. v. NOBILITY MV*, 421 F.3d 295, 297 n.1-2 (5th Cir. 2005); 8 Benedict on Admiralty § 18.02.

million in damages.

Plaintiff served the Summons and First Amended Complaint by registered mail and personal service through a Hong Kong solicitor firm, Humphrey & Associates. Specifically, on April 15, 2025, Defendants were personally served at their common registered office in Hong Kong by Lak Hok Ming. On that day, Lak Hok Ming also served the Defendants by registered mail. Plaintiff filed proofs of the mail and personal service with this Court.

## II. MOTION TO QUASH SERVICE PURSUANT TO RULE 12(b)(5)

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant to move for dismissal based on insufficient service of process. Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Federal Rule of Civil Procedure 4 governs service of process in federal court. Under Rule 4(h)(2), a foreign corporation may be served in any manner prescribed by Rule 4(f) for serving an individual in a foreign country, except that a foreign corporation may not be served by personal delivery under Rule 4(f)(2)(C)(i). Rule 4(f) provides:

> **(f) Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
> (i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

**B. Discussion**

Defendants move to quash service of process, on the grounds that Plaintiff did not accomplish service through Hong Kong's Central Authority under Article 5 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). Plaintiff contends that service through Hong Kong's Central Authority was not necessary, because the Hague Convention permits service of process by alternative methods and the service employed by Plaintiff complies with Hong Kong law.

Hong Kong and United States are both signatories to the Hague Convention. *See, e.g., SATA GmbH & Co. KG v. Wenzhou New Century Int'l, Ltd.*, 2015 WL 13919069, at *2 (C.D. Cal. Dec. 18, 2015). Service under the Hague Convention is mandatory for all "civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Art. 1. "The primary means by which service is accomplished under the Hague Convention is through a receiving country's 'Central Authority.'" *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). In addition to service through a country's Central Authority, Article 10 of the Hague Convention allows service of process by alternative means, including personal service or service by mail "[p]rovided the State of destination does not object." Hague Convention, Art. 10. Specifically, Article 10 provides:

> Provided the State of destination does not object, the present Convention shall not interfere with – (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, (b) the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination, (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention, art. 10. In other words, "Article 10 of the Convention permits other means of service *bypassing the Central Authority*, but signatory countries may opt out of Article 10 (in part or in whole)." *Maxell Holdings, Ltd. v. Amperex Tech. Ltd.*, 2022 WL 1176723, at *8 (W.D.Tex. Feb. 9, 2022)(emphasis added).

The Court concludes that Hong Kong has not objected to service by mail under Article 10(a) or personal service under Article 10(b) or (c) of the Hague Convention.[3] *See, e.g., TracFone*

[3]Confusingly, in their moving papers, Defendants state that "Hong Kong does not oppose the service of documents under Article 10 of the Hague Service Convention," *see* Motion at 14, yet state in their Reply that Hong Kong has objected to Article 10, *see* Reply at 4. Notably, Defendant's

*Wireless, Inc. v. Unlimited PCS Inc.*, 279 F.R.D. 626, 630 (S.D. Fla. 2012) (concluding that Hong Kong does not object to judicial documents being sent by postal channels under Article 10(a) and concluding that service by postal channel can be effectuated in Hong Kong); *Willis v. Magic Power Co.*, 2011 WL 66017, at *3 (E.D. Pa. Jan. 7, 2011) ("Neither the People's Republic of China nor Hong Kong has objected under the Hague Service Convention to service of process by mail in Hong Kong."); *Denlinger v. Chinadotcom Corp.*, 110 Cal. App. 4th 1396, 1405 (2003) (concluding that "Hong Kong has not objected to article 10(a)" and permitting service on defendants by registered mail); *Whyenlee Indus. Ltd. v. Superior Ct.,* 33 Cal. App. 5th 364, 369 (2019) (concluding that Hong Kong has not objected to article 10 of the Hague Convention and that plaintiffs were permitted to use an agent to serve defendant personally in Hong Kong without first making a request to Hong Kong's Central Authority); *Maxell Holdings, Ltd. v. Amperex Tech. Ltd.,* 2022 WL 1176723, at *8 (W.D. Tex. Apr. 20, 2022) (adopting analysis in *Whyenlee* and concluding that Hong Kong does not object to Article 10(b) and (c) of the Hague Convention); U.S. Dept. of State – Bureau of Consular Affairs, Hong Kong Special Administrative Region: Service of Process, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html (last accessed June 10, 2025) ("Hong Kong did not make any reservations with respect to service by international registered mail or service by agent. However, Hong Kong advises that service by the Convention is the preferred method.")

Article 10, however, does not itself affirmatively authorize service through postal channels or personal service (without first making a request to Hong Kong's Central Authority). Rather, Article 10 merely provides that the Hague Convention shall not interfere with the "freedom" to use those means of service if the "State of destination " does not object to their use. *See Brockmeyer v. May*, 383 F.3d 798, 803 (9th Cir. 2004). Hague Convention, Art. 10. Any affirmative authorization to use these means of service, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed. *Id.* at 804, The Court thus must determine if Federal Rule of Civil Procedure 4(f) authorizes service by registered mail and personal service through a Hong Kong solicitor firm, as used by Plaintiff in this case.
.

Federal Rule of Civil Procedure 4(f)(2)(A) provides that service may be effected in a place not within any judicial district of the United States:

> (2) if there is no internationally agreed means, *or if an international agreement allows but does not specify other means*, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction.

Accordingly, the Court must determine if Plaintiff effectuated service on Defendants as prescribed by Hong Kong domestic law.

---

Hong Kong Law expert, Ronald Sum, states that Hong Kong does not oppose the service of documents under Article 10 of the Hague Convention. *See* Declaration of Ronald Sum (Docket No. 46) ¶ 7.

The Court concludes that Plaintiff effectuated service in compliance with Hong Kong's domestic law. Section 827 of the Companies Ordinance (Chapter 622 of the laws of Hong Kong) (the "Companies Ordinance") provides that: "A document may be served on a company by leaving it at, or sending it by post to, the company's registered office." A "document" is defined as "a summons, notice, order and any other legal process." Companies Ordinance, Section 2. In this case, on April 15, 2025, Lak Hok Ming, Senior Legal Executive of Humphrey & Associates, personally went to Defendants' common registered office in Hong Kong and left the First Amended Complaint and Summons (among other documents) at the registered office. On that same day, Lak Hok Ming also served the Defendants by registered mail. Plaintiff filed proofs of the mail and personal service with this Court. Accordingly, the Court concludes that Plaintiff has met its burden to establish that it served Defendants in accordance with Federal Rule of Civil Procedure 4(f), the Hague Convention, and Hong Kong law. *See, e.g., SATA GmbH & Co. KG v. Wenzhou New Century Int'l, Ltd.,* 2015 WL 13919069, at *2 (C.D. Cal. Dec. 18, 2015) (concluding that delivery of Summons and Complaint by a solicitor at the defendant's registered office in Hong Kong complied with Section 827 of the Companies Ordinance , the Hague Convention and Federal Rule of Civil Procedure 4); *Maxell Holdings, Ltd. v. Amperex Tech. Ltd.*, 2022 WL 1176723, at *10 (W.D. Tex. Apr. 20, 2022) (concluding that personal service by a process server at a company's registered office in Hong Kong complied with Hong Kong Companies Ordinance No. 827); *CMA CGM S.A. v. Ocean Line Logistics Inc.*, 2022 WL 3009461, at *6 (C.D. Cal. June 3, 2022) (concluding that service by Fed Ex at a company's registered office in Hong Kong complied with Hong Kong law).

For the foregoing reasons, Defendants' Motion to Quash Service Pursuant to Rule 12(b)(5) is **DENIED**.

## III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2)

### A. Legal Standard

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court may decide a question of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the parties, or may hold an evidentiary hearing on the matter. *See* 5A Wright & Miller, Federal Practice and Procedure, § 1351, at pp. 253-59 and n. 31-35 (2d ed. 1990); *Rose v. Granite City Police Dept.*, 813 F. Supp. 319, 321 (E.D. Pa. 1993). Whichever procedure is used, the plaintiff bears the burden of establishing that jurisdiction is proper. *See Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995); *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984).

Because this matter is being decided on the basis of affidavits and documentary evidence, Plaintiff needs to only make a prima facie showing of personal jurisdiction. *See Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). All allegations in Plaintiff's Complaint must be taken as true, to the extent not controverted by Defendant's affidavits, and all conflicts in the evidence must be resolved in Plaintiff's favor. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). A prima facie showing by the plaintiff will be sufficient to support a finding of jurisdiction, "notwithstanding [a] contrary presentation by the moving party." *Wenz v. Memery Crystal*, 55 F.3d

1503, 1505 (10th Cir. 1995).

1. Specific Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A)

Federal courts ordinarily follow state law in determining whether they have jurisdiction over defendants. *See* Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). California's long-arm statute extends jurisdiction to the limits of constitutional due process. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996); Cal. Code. Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"). Consequently, the Court must determine whether the exercise of jurisdiction over Defendants comports with due process.

The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over a defendant who has sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two recognized bases for personal jurisdiction over nonresident defendants: (1) "general jurisdiction," which arises where the defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum have given rise to the claim in question. *See Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050–51 (9th Cir. 1997). Plaintiff concedes that the Court does not have general jurisdiction over Defendants. Accordingly, the Court need only determine whether it has specific jurisdiction over Defendants.

For a court to exercise specific jurisdiction, the plaintiff's suit must arise out of or relate to the defendant's contacts with the forum. *Bristol-Meyers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1778 (2017). The Ninth Circuit applies a three-part test to determine whether a court has specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). A plaintiff bears the burden of establishing the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff fails to satisfy either of the first two prongs, then personal

jurisdiction over the defendant does not lie in the forum state. *Id.* If the plaintiff succeeds on the first two prongs, then the defendant must present a compelling case as to why exercising jurisdiction would be unreasonable. *Id.*

The first prong of the specific jurisdiction test, although commonly referred to as the purposeful availment requirement, actually consists of two distinct concepts. *Id*. A plaintiff may satisfy this element by demonstrating that the defendant "has either (1) 'purposefully availed' [it]self of the privilege of conducting activities in the forum [state], or (2) 'purposefully directed' [its] activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The purposeful availment concept typically applies in contract cases, whereas the purposeful direction concept typically applies in tort cases. *Axiom*, 874 F.3d at 1069; *see also Fiore v. Walden*, 688 F.3d 558, 576 (9th Cir. 2012), *rev'd on other grounds* by *Walden v. Fiore*, 571 U.S. 277 (2014). "However, our cases do not impose a rigid dividing line between these two types of claims." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). "At the end of the day, the purposeful direction and availment tests simply frame our inquiry into the defendant's 'purposefulness' vis-à-vis the forum state, ensuring that defendants are not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1089 (9th Cir. 2023) (quoting *Global Commodities*, 972 F.3d at 1107).

2. Federal Rule of Civil Procedure 4(k)(2)

For a claim that arises under federal law, even if a plaintiff cannot establish jurisdiction under a state's long-arm statute, the Court may also exercise personal jurisdiction over a foreign defendant under Federal Rule of Civil Procedure 4(k)(2). Federal Rule of Civil Procedure 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

"Rule 4(k)(2) provides aggrieved plaintiffs with a mechanism for vindicating their federal rights in cases involving defendants that lack single-state contacts, but who possess minimum contacts with the United States as a whole." *Getz v. Boeing Co.*, 654 F.3d 852, 859 (9th Cir. 2011).

Under Federal Rule of Civil Procedure 4(k)(2). The Court analyzes whether the exercise of personal jurisdiction is consistent with the due process clause of the Fifth Amendment, rather than the Fourteenth Amendment. *Hardy v. Scandinavian Airlines Sys.*, 117 F.4th 252, 264-68 (5th Cir. 2024), "But the process of analysis should be familiar – the Fifth Amendment due process test for personal jurisdiction requires the same "minimum contacts" with the United States as the Fourteenth Amendment requires with a state." *Id.* (quotations and citations omitted).

## B. Discussion[4]

### 1. Cosgold Maritime

The Court concludes that Plaintiff has failed to establish that personal jurisdiction over Cosgold Maritime is proper.

Cosgold Maritime, the registered owner of the *COSGOLD LAKE*, has no business interests with California. It is organized under the laws of Hong Kong; maintains no offices in the United States. and is not licensed or registered to conduct business in the United States. None of its officers or directors reside in the United States. and none of its employees reside or work in the United States or employ or consistently work with agents that reside in the United States. Cosgold Maritime also does not maintain ownership interests in the United States. It does not maintain a bank account in the United States. Nor does it own real property, stock or partnership interests in any company organized or doing business within the United States. Cosgold Maritime does not advertise in the United States.

Cosgold Maritime's sole contact with the litigation is that it was the registered owner of the *COSGOLD LAKE* at the time of the collision. However, it had entered into a bareboat charter agreement with Pan Cosmos, whereby it relinquished all control over the navigation of the *COSGOLD LAKE* to Pan Cosmos. Indeed, under the Cosgold Lake - Pan Cosmos bareboat charter agreement, Pan Cosmos assumed "complete control in every respect" of the *COSGOLD LAKE*. Pan Cosmos Director Yan Bo confirmed that it was responsible for "manning" and "navigating" the *COSGOLD LAKE*. Moreover, the *COSGOLD LAKE* has made only two calls to the Port of Long Beach over the past five years, and that destination was determined by the ultimate voyage charterer, not Cosgold Maritime.

Cosgold Maritime does not conduct business in the United States other than at the direction of charterers. It receives no increased "hire" if ships call at the ports of Long Beach or Los Angeles. Cosgold Maritime has not been not involved with the booking of cargo for carriage on the *COSGOLD LAKE* during the past five years. It has not negotiated freight rates with carriers or determined the commercial schedule or the ports at which the *COSGOLD LAKE* called during the past five years. Cosgold Maritime has no responsibilities regarding conducting cargo operations, and does not man and operate the vessels it owns as a result of its bareboat charter agreements. Finally, no Americans have sailed aboard the *COSGOLD LAKE* or any other vessel owned by Cosgold Maritime during the past five years.

The Court concludes that these contacts are wholly insufficient to confer specific personal

---

[4]In its briefing, Plaintiff conflates the identities of the four Defendants and fails to individually and specifically analyze the relevant contacts of each Defendant. As a result, except as to Cosgold Maritime, it was virtually impossible for the Court to rule on this motion. As discussed *infra*, the Court will permit Plaintiff an opportunity to conduct jurisdictional discovery as to three of the Defendants. In any future briefing addressing the personal jurisdiction over these three defendants, Plaintiff shall individually analyze each of the Defendants' contacts with this forum (and with the United States).

jurisdiction over Cosgold Maritime in California. There is simply no evidence that Cosgold Maritime has either (1) purposefully availed itself of the privilege of conducting any activities in California, or (2) purposefully directed any of its activities toward California. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784 (5th Cir, 1990) (concluding that specific jurisdiction did not exist over ship owner in Louisiana, where the ship was under the control over its charterers and the owner did not direct the ship to Louisiana); *Am. Home Assurance Co. v. M/V One Helsinki,* 546 F. Supp. 3d 90, 95 (D. Mass. 2021 (concluding that the ship owner did not purposefully avail itself of the privilege of conducting activities in Massachusetts where the owner relinquished all control over the ship's destination by entering into a bareboat charter agreement and where the contract entered into by the owner did not appear to contain any provision allowing the owner to exert control over the vessel's destination or indicating in any way that the vessel was destined for Massachusetts).

Plaintiff attempts to distinguish these cases on the grounds that the Cosgrove Maritime's bareboat charter agreement with Pan Cosmos provides that: "[I]f required, [Pan Cosmos] shall keep [Cosgold Lake] . . . advised of the intended employment of the Vessel." The Court agrees with Defendants that the mere fact that Cosgold Maritime could require Pan Cosmos to advise on the intended employment of the vessel is insufficient to overcome the facts that Cosgold Martime relinquished control of the *COSGOLD LAKE* to Pan Cosmos and the contract did not specifically provide that the *COSGOLD LAKE* would enter the State of California.

Although Plaintiff requests an opportunity to conduct jurisdictional discovery as to Cosgold Maritime to determine the extent to which Cosgold Maritime may have been kept apprised of the *COSGOLD LAKE*'s commercial schedule by Pan Cosmos, the Court finds that any such evidence would be irrelevant and would not alter the Court's conclusion that the Court lacks personal jurisdiction over Cosgrove Maritime. Accordingly, Plaintiff's request to conduct jurisdictional discovery as to Cosgrove Maritime is denied.

For the foregoing reasons, the Court grants Defendants' motion to dismiss Cosgold Maritime for lack of personal jurisdiction.[5]

2. <u>The Remaining Defendants</u>

In its Opposition and Response to the Supplemental Declaration of Zhou Jingqing, Plaintiff also requests an opportunity to conduct limited jurisdictional discovery as to Defendants Pan Cosmos, China Shipping, and China Pool. "Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)

---

[5]Plaintiff has also failed to demonstrate that the Court's exercise of personal jurisdiction over Cosgold Maritime comports with due process under the Fifth Amendment for the purposes of Federal Rule of Civil Procedure 4(k(2). *See* Plaintiff's Opposition (Docket No. 41) at 21-22; Plaintiff's Proposed Statement of Decision (Docket No. 52-1) at 11-13 (only attempting to demonstrate that the Court may exercise personal jurisdiction over China Pool pursuant to Federal Rule of Civil Procedure 4(k)(2)).

(internal quotation marks omitted). The Court concludes that a more fully developed factual record is necessary for the Court decide Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) as to Pan Cosmos, China Shipping, and China Pool. Accordingly, the Court exercises its discretion and grants Plaintiff's request to conduct jurisdictional discovery. The jurisdictional discovery shall be completed on or before **October 14, 2025.** At that time, Defendants Pan Cosmos, China Shipping, and China Pool may renew their motion for lack of personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Quash Service Pursuant to Rule 12(b)(5) is **DENIED**. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) is **GRANTED in part, DENIED in part**. Defendant Cosgold Lake Maritime, Ltd. is **DISMISSED without prejudice** for lack of personal jurisdiction**.** Defendants Pan Cosmos, China Shipping, and China Pool may renew their motion for lack of personal jurisdiction after the close of jurisdictional discovery on October 14, 2025.

The Court is aware that, on December 6, 2024, before Cabo Virgenes filed its Complaint in this action, Pan Cosmos filed an action with the Ningbo Maritime Court of the People's Republic of China ("Ningbo Court"), seeking damages for the collision at issue in this case. On December 16, 2024, Cabo Virgenes filed a counterclaim, seeking compensation of US $1.4 million (the identical amount it seeks in this case), as well as an application challenging jurisdiction. On February 7, 2025 , the Ningbo Court held a hearing on Cabo Virgenes's application challenging jurisdiction, and, on April 8, 2024 issued a civil ruling rejecting Cabo Virgenes's application challenging jurisdiction. On May 6, 2025, Cabo Virgenes filed an appeal challenging the Ningbo Court's ruling.

The Court finds that it is an incredible waste of judicial resources, as well as the parties' time and money, for the parties to litigate their claims regarding the December 18, 2022 collision between the *CABO KAMUI* and the *COSGOLD LAKE* in two separate courts. Accordingly, the Court orders the parties to show cause, in writing, on or before **June 17, 2025**, why this action should not be stayed pending the resolution of the proceedings in the Ningbo Court. No oral argument on this matter will be heard unless otherwise ordered by the Court. *See* Fed. R. Civ. P. 78; Local Rule 7-15. The Order will stand submitted upon the filing of the response to the Order to Show Cause. Failure to respond to the Order to Show Cause will result in the stay of this action.

IT IS SO ORDERED.

 Initials of Deputy Clerk _sr_